### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *ROGER DESJARDINS,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-2-B-W* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") appeal, the plaintiff contends that the administrative law judge erroneously found that his dermatographism[2] was not a severe impairment.  I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through June 30, 2001, Finding 1, Record at 12; that before this date the plaintiff suffered from the impairments of dermatographism and diabetes mellitus, neither of which, considered alone or in combination, was severe, Findings 3-4, *id.*; and

---

[1] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on September 17, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] Dermatographism is "[a] form of urticaria in which whealing occurs in the site and in the configuration of application of stroking (pressure, friction) of the skin."  Stedman's Medical Dictionary (27th ed. 2000) at 481.  Urticaria is "[a]n eruption of itching wheals, usually of systemic origin[.]"  *Id.* at 1918.

that he was therefore not under a disability as defined in the Social Security Act through June 30, 2001, the date last insured, Finding 5, *id.* at 16.  The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981, *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review herein is whether the commissioner's determination is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential-evaluation process.  The claimant bears the burden of proof at Step 2, although it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85-28).

### Discussion

The plaintiff argues specifically that the administrative law judge failed properly to analyze the side effects of the prescribed medication he took to treat his dermatographism before the date last insured, Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") at

2

1-2, and that the administrative law judge should have accepted the retrospective diagnosis of the

cause of his daytime sleepiness made in 2002, *id*. at 6-8.

The administrative law judge's opinion included the following relevant discussion:

> The claimant testified that his itching condition goes back to problems when he returned from Vietnam.  In September 2000 he saw Dr. Robert Shaw at the VA clinic and was prescribed hydroxyzine, which stopped the itching, but made him sleepy.  He had to stop driving the snow plow in February 2001 because he was less alert due to the medication. . . . The itching is worse with humidity and sweating, and after taking a shower the itching is so severe it drives him crazy.  He has to take the medication after showering.  In 2001, the itching was so severe that at one time he almost shot himself.
>
> * * *
>
> The record shows that the claimant sought treatment in September 2000 for bumps under the skin that occasionally hurt and he was prescribed hydroxyzine.  He complained of general itching on February 5, 2001 and stated that the symptoms were worse in warm weather.  He had no rash.  Dr. Robert Shaw saw him for chronic pruritis and skin tag removal in April 2001.  The claimant reported that he continued to have severe itching, which "drives me crazy," but the hydroxyzine provided relief.  In June 2001 the claimant told Cheryl A. Kempton R.N.  that when he feels the itching come on he takes 50 mg hydroxyzine and is able to control the itch.   In August 2001, Dr. Shaw reported that the dermatology consultation had resulted in a diagnosis of dermatographism.  At no time did the claimant tell any[]one that the hydroxyzine made him sleepy and prevented him from driving a snowplow.  There is no reference in the record of any adverse side effects from the hydroxyzine prior to May 31, 2002 (Exhibits 2F and 20F).

Record at 14.  The administrative law judge also suggested that the plaintiff "stopped plowing

snow in December 2002 as the medical record indicates (Exhibit 20F), rather than February 2001

as he testifies."  *Id*. at 15.

The opinion continues as follows:

> As for the opinion evidence, in June 2002, Dr. Sarnik stated that the claimant's itching was getting progressively worse and because of his daily need for hydroxyzine his driving capability was impaired and he could not perform his work safely (Exhibit[] 2F).  The claimant may have been unable to perform his work safely in June 2002, but this

3

> opinion cannot be applied retroactively because the claimant made no
> complaints of adverse side effects from the hydroxyzine at any time prior
> to May 31, 2002 (Exhibit 20F).  It is also inconsistent with Dr. Paradis's
> January 2003 report that the claimant quit snowplowing because of
> difficulty getting insurance because of the diagnosis of sleep apnea
> (Exhibit 20F).  No doctor or treating source placed any limitations on the
> claimant on or before June 30, 2001.
>
> * * *
>
> The medical reports through June 30, 2001 show hydroxyzine provided
> relief for his itching; there are no complaints of side effects such as
> severe drowsiness (Exhibit 20F).

*Id*. at 15-16.

The plaintiff contends that "[t]here was, in fact, sufficient corroboration of the side effects [of hydroxyzine] based on retrospective diagnoses from the Plaintiff's treating physicians and the nature of the drug itself, including its product warnings[.]"  Itemized Statement at 2.

I reject the argument that the "nature" of a drug prescribed before a claimant's date last insured, "including its product warning," is alone sufficient to establish that the claimant suffered from one of the *possible* side effects of that drug, even if the drug was necessary – that is, that the claimant's medical condition required the use of only that drug and only in the dosage then prescribed – and the possible side effect constituted a severe impairment under Social Security law.  A claimant relying on the side effect of a given medication to establish the existence of a severe impairment must, at a minimum, show evidence that he or she suffered from the side effect before the date last insured at a qualifying degree of severity that could not be mitigated. *See, e.g., Brockway v. Barnhart*, 94 Fed.Appx. 25, 28 (2d Cir. 2004); *Ross v. Astrue*, 2008 WL 5111148 (W.D.Okla. Dec. 2, 2008), at *6.  As the administrative law judge found, the medical records do not evidence any complaints by the plaintiff of severe drowsiness caused by the hydroxyzine before June 30, 2001.

The only timely entries in his medical records cited by the plaintiff on this point, *id.* at 3, do not support a conclusion that he reported drowsiness caused by the medication.  There simply is no mention of this side effect in any of these entries.  Record at 436-38, 440-41.  There is an entry indicating that the plaintiff told a nurse practitioner on June 7, 2001, that the drug piroxicam was making him sleepy and tired, *id.* at 436, but I cannot accept the plaintiff's invitation, Itemized Statement at 3 n.5, that this entry should be read as a reference to hydroxyzine, a different medication, particularly when piroxicam had been prescribed for the plaintiff, Record at 441.  The plaintiff is not entitled to remand on the basis of such speculation.

The plaintiff also relies on entries in his medical records after the date last insured, which he characterizes as "retrospective diagnoses from [his] treating physicians."  Itemized Statement at 2, 4-5.  None of the cited entries can reasonably be read to support a conclusion that the plaintiff suffered from severe drowsiness as a side effect of hydroxyzine before the date last insured, let alone require an administrative law judge so to conclude.

Thus, (1) the plaintiff told Dr. Robert L. Shaw in August 2001 that he "f[ee]ls tired all the time," but this statement is not tied to any drug, and Dr. Shaw in response merely recommends exercise, Record at 434; (2) he told Dr. Irvin L. Paradis in August 2002, over a year after the date last insured, that his "[h]ypersomn[o]lence [is] much worse when he takes [hydroxyzine] to control itching from dermatographism" and that physician concluded that "[h]is obstructive sleep apnea is due to the combined effects of [hydroxyzine], obesity and ?genetic factors" and told the plaintiff to lose weight and minimize his use of hydroxyzine, *id.* at 423, but nothing in this note so much as suggests that these conditions existed before the date last insured or would allow a nonprofessional to draw a reasonable conclusion to that effect; (3) the plaintiff told a nurse in January 2003 that he "hasn't slept in ten years," *id.* at 416, but nothing in that note suggests that

this lack of sleep was due to his use of hydroxyzine, and there is no indication in the medical records that the plaintiff had been taking hydroxyzine over a period of ten years; (4) Dr. Paradis in January 2003 again recommended that the plaintiff minimize his use of "sedative meds such as" hydroxyzine, *id*. at 413, but again said nothing that could allow the drawing of a reasonable inference that any drowsiness or sleep apnea caused by the drug existed before the date last insured; (5) the plaintiff told Dr. Marianna Sarnik in March 2002 that hydroxyzine made him "extremely tired and sleepy" and that taking two hydroxyzine pills two to three times a day "makes him very sleepy," *id*. at 216, 217, and she wrote in a letter dated June 6, 2002, that the plaintiff had suffered from "chronic itching since 1974 which has been getting progressively worse" and that his then-current need to take one to two hydroxyzine pills at a time on a daily basis impaired his driving capabilities so that he "cannot perform his work safely," *id*. at 214, but again there is no basis for a reasonable inference that Dr. Sarnik believed that this situation existed on the date last insured, particularly where she states that the itching "has been getting progressively worse."

The plaintiff also relies on his own testimony to support his argument, Itemized Statement at 5-6, but at Step 2 of the sequential evaluation process, only medical evidence may be used to support a finding that an impairment is severe.  20 C.F.R. § 404.1528(a); Social Security Ruling 85-28, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 394; *see also Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

At Step 2, it is the claimant's burden to show that an impairment was severe before the date last insured.  The standard is not, as the plaintiff would have it, that "[t]here is nothing in the record to suggest that the reaction to the use of hydroxyzine occurred only after [the] D[ate] L[ast] I[nsured]."  Itemized Statement at 7.  The standard is, rather, that there must be medical

evidence in the record showing that the disabling reaction to the use of hydroxyzine *did* occur prior to the date last insured.  *See, e.g., Lowe v. Astrue*, 2009 WL 2849749 (M.D.Tenn. Sept. 2, 2009), at *9 (medication side effect of increased sleepiness coincided with increase in dosage of medication, which occurred more than a year after the date last insured).

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2009.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge